

ENTERED
02/14/2018

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| TECHNICOOL SYSTEMS, INC. | § | CASE NO: 15-34435 |
| Debtor(s) | § | |
| | § | CHAPTER 7 |
| | § | |
| LOWELL T. CAGE | § | |
| Plaintiff(s) | § | |
| | § | |
| VS. | § | ADVERSARY NO. 17-3265 |
| | § | |
| WORLDFAB, INC., *et al* | § | |
| Defendant(s) | § | |

## MEMORANDUM OPINION

Lowell T. Cage, Trustee of the Technicool Systems, Inc. bankruptcy estate, filed his Second Amended Complaint to pierce the corporate veil and impose liability on Jeff Huckaby and Robert Furlough as well as Safe-T-Cool, Inc., and WorldFab, Inc., two businesses Furlough owns. (*See* ECF No. 27). The Trustee's complaint also sought other forms of relief against the Defendants, such as turnover of estate property, avoidance of fraudulent transfers, and injunctive relief. (*See* ECF No. 27). The Defendants filed a joint motion to dismiss, alleging that the Trustee's complaint failed to state a claim for which relief may be granted. (*See* ECF No. 31).

Because Texas law limits the liability of third parties for Technicool's debts, the defendants' motion to dismiss is granted in part and denied in part.

### Jurisdiction and Authority

This Court has subject matter jurisdiction under 28 U.S.C. § 1334. This matter has been referred by the District Court to the Bankruptcy Court by General Order 2012-6.

## Background

Robert Furlough founded Powerhouse Marine International, Inc., in the 1970s to sell industrial heating, ventilation, and air conditioning ("HVAC") units to the oil and gas industry. (ECF No. 27 at 4). Furlough's business grew to include the production of modular control houses as well as HVAC units. In 1997, Furlough decided to found Safe-T-Cool, Inc., in order to spin off the HVAC producing portion of Powerhouse into a separate company. (ECF No. 27 at 4). After the split, Powerhouse continued to build modular control houses until 2006 when Furlough created WorldFab, Inc., which assumed all of Powerhouse's modular building assets and operations. (ECF No. 27 at 5).

In 2006, Safe-T-Cool was accused of trademark infringement and became involved in a dispute over the right to use the Safe-T-Cool name. (ECF No. 27 at 5). Furlough decided to create a new entity to assume all of Safe-T-Cool's operations. Furlough founded Technicool in 2008, naming himself as the sole owner and his then son-in-law, Robert Huckaby, as President. (ECF No. 27 at 5–6). All of Safe-T-Cool's assets and operations were transferred to Technicool which operated until August 14, 2015, when it filed for chapter 7 bankruptcy in this Court. (ECF No. 27 at 4).

One of Technicool's principal customers was National Oilwell Varco ("NOV"). (ECF No. 27 at 11). On November 10, 2014, NOV sued the Debtor in Texas state court. (ECF No. 27 at 11). The lawsuit alleged various causes of action, including breach of contract, breach of warranty, negligent misrepresentation, and product liability. (ECF No. 27 at 13).

In the bankruptcy case, NOV has been the only active creditor. (*See generally* Case No. 15-34435). NOV developed an alliance with the Trustee in which NOV's counsel was retained by the Trustee to represent the Trustee in litigation against Technicool's former owners and

affiliates. As an accommodation to the Trustee (and to overcome any potential conflict), NOV has subordinated its claims against the Estate to 100% payment of all administrative expenses and to 100% recoveries by all other unaffiliated, general unsecured creditors in this case.

In light of the full subordination and other factors, the Court approved NOV's state court counsel as Trustee's counsel in this present litigation. (Case No. 15-34435; ECF No. 96).

**The Complaint**

The current live complaint in this adversary proceeding is the Second Amended Complaint filed on November 6, 2017. The Second Amended Complaint alleges three causes of action. (*See generally* ECF No. 27).

Count I of the Second Amended Complaint seeks a declaratory judgment piercing the corporate veil. Under this theory, the Trustee asserts that multiple persons and entities are liable for all corporate debt:

- Robert Furlough was Technicool's owner and also exercised significant control over Technicool's affairs. The Trustee makes explicit allegations that Furlough misused the corporate form to perpetrate or perpetuate fraud by Technicool.

- Jeff Huckaby is Robert Furlough's son-in-law. The Trustee alleges that Furlough exercised significant operational control over Technicool. Although the Trustee also asserts that Furlough was a de facto owner of Technicool, the Trustee is unable to articulate any facts in support of that allegation.

- Worldfab, Inc. is a company that has been owned by Furlough and Huckaby at various times. The Trustee alleges that Worldfab received fraudulent conveyances and otherwise generally worked with Technicool to commit fraud. The Trustee does not allege that Worldfab ever owned any interest in Technicool.

- Safe-T-Cool, Inc. is alleged to be a predecessor in interest to Technicool. The Trustee alleges that Safe-T-Cool transferred its trademarks and other rights to Technicool in 2006. It is unclear what type of veil-piercing conduct is attributable to Safe-T-Cool. The Trustee does allege that Safe-T-Cool received property from Technicool immediately prior to the filing of the bankruptcy petition. It is clear that the Trustee alleges that Huckaby and Furlough controlled Safe-T-Cool.

Count II of the Second Amended Complaint seeks a declaratory judgment for turnover of estate property. It appears that this Count rests on a victory by the Trustee of the veil-piercing count. If the veil is pierced, the Trustee seeks an order compelling the pierced entities to turn over their property.

Count III of the Second Amended Complaint seeks to avoid various alleged fraudulent transfers made to the defendants. This count is supported by substantial allegations against World Fab, Huckaby and Furlough.

Count IV seeks injunctive relief. The injunctive relief is dependent on the Trustee's success on other counts.

In response, the Defendants filed a joint motion to dismiss, arguing that the Trustee's amended complaint fails to meet the heightened pleading standard required for fraud allegations in Federal Rule of Civil Procedure 9 and should be dismissed under Federal Rule of Civil Procedure 12(b)(6). (ECF No. 31 at 5). In the alternative, the Defendants claim that the Court should abstain from hearing this dispute and allow a parallel suit to continue against the Defendants in state court. (ECF No. 31 at 15).

The parties presented oral arguments on January 22, 2018, and the Court took the matter under advisement on January 23, 2018.

## Motion to Dismiss

The Court reviews motions under Rule 12(b)(6) "accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiffs." *Stokes v. Gann*, 498 F.3d 483, 484 (5th Cir. 2007) (per curiam). However, the Court "will not strain to find inferences favorable to the plaintiff." *Southland Sec. Corp. v. INSpire Ins. Solutions Inc.*, 365 F.3d 353, 361 (5th Cir. 2004) (internal quotations omitted).

To avoid dismissal for failure to state a claim, a plaintiff must meet Fed. R. Civ. P. 8(a)(2)'s pleading requirements. Rule 8(a)(2) requires a plaintiff to plead "a short and plain statement of the claim showing that the pleader is entitled to relief." In *Ashcroft v. Iqbal*, the Supreme Court held that Rule 8(a)(2) requires that "the well-pleaded facts" must "permit the court to infer more than the mere possibility of misconduct." 556 U.S. 662, 679 (2009) (quoting Rule 8(a)(2)). "Only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "[A] complaint does not need detailed factual allegations, but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true raise a right to relief above the speculative level." *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009) (internal quotation marks removed).

Fraud claims must, in addition, meet Fed. R. Civ. P. 9(b)'s heightened pleading requirements. Under Rule 9(b), fraud claims must be alleged with particularity concerning the circumstances of the fraud. FED. R. CIV. P. 9(b). *See Oppenheimer v. Prudential Sec. Inc.*, 94 F.3d 189, 195 (5th Cir. 1996) (upholding district court's dismissal of fraud claims where the plaintiff failed to allege when an allegedly fraudulent sales charge was incurred or the extent of her damages); *Red Rock v. JAFCO Ltd.*, 1996 WL 97549, at *3 (5th Cir. Feb. 16, 1996) (holding that the plaintiff's allegations did not satisfy Rule 9(b) where they failed to allege the time, place, or content of any misrepresentations). "To plead fraud adequately, the plaintiff must 'specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent.'" *Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 551 (5th Cir. 2010) (quoting *ABC Arbitrage v. Tchuruk*, 291 F.3d 336, 350 (5th Cir. 2002)).

A motion under Rule 12(b)(6) will be treated as one for summary judgment under Rule 56 when matters outside the pleadings are presented and not excluded by the Court. FED. R. CIV. P. 12(d); FED. R. BANKR. P. 7012(b). Under Rule 56, summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); FED. R. BANKR. P. 7056. In the event a motion to dismiss is converted to one for summary judgment, a court must first give the parties notice and then may consider all evidence presented. *Rodriguez v. Rutter*, 310 F. App'x 623, 626 (5th Cir. 2009).

## Analysis

Count I – Veil Piercing

"Alter ego applies when there is such unity between corporation and individual that the separateness of the corporation has ceased and holding only the corporation liable would result in injustice." *Castleberry v. Branscum*, 721 S.W.2d 270, 272 (Tex. 1986). However, a shareholder cannot be held liable for a corporation's contractual obligations unless the shareholder "caused the corporation to be used for the purpose of perpetrating and did perpetrate an *actual fraud* on the obligee primarily for the *direct personal benefit* of the holder, beneficial owner, subscriber, or affiliate. TEX. BUS. ORG. CODE. § 21.223 (emphasis added). The requirement that an actual fraud was perpetrated involves "dishonesty of purpose or intent to deceive" rather than the higher standard imposed on the tort of fraud. *In re Ritz*, 832 F.3d 560, 567 (5th Cir. 2016); *Latham v. Burgher*, 320 S.W.3d 602, 607 (Tex. App.—Dallas 2010, no pet.) (quoting *Castleberry v. Branscum*, 721 S.W.2d 270, 273 (Tex. 1986)). The enactment of the veil piercing statute has "done away with failure to observe corporate formalities as a factor to support piercing the corporate veil in Texas." *In re Ryan*, 443 B.R. 395, 407 (Bankr. N.D. Tex. 2010).

The Defendants argue that veil piercing claims may only be asserted against a shareholder or other owner of the to-be-pierced company. The primary authority that supports this argument is *Bollore S.A. v. Import Warehouse,* 448 F.3d 317 (5th Cir. 2006). The Court has thoroughly reviewed this Fifth Circuit opinion, and the holding is unambiguous. Veil piercing is a Texas cause of action; under Texas law, the veil may only be pierced against an owner. *Id.* at 325-26:

> The great weight of Texas precedent indicates that, for the alter ego doctrine to apply against an individual under this test, the individual must own stock in the corporation. *Permian Petroleum,* 934 F.2d at 643 ("Texas courts will not apply the alter ego doctrine to directly or reversely pierce the corporate veil unless one of the 'alter egos' owns stock in the other."); *Zahra,* 910 F.2d at 245 (holding that a finding of unity between the individual and the corporation "alone cannot establish an alter ego relationship under Texas law, because [Appellants] are not direct shareholders of [the corporation]"); *Castleberry,* 721 S.W.2d at 272 (stating that, to be considered a corporation's alter ego, an individual must have "ownership *and* control") (emphasis added); *Lucas v. Texas Indus., Inc.,* 696 S.W.2d 372, 374 (Tex.1984) (same); *Patterson v. Wizowaty,* 505 S.W.2d 425, 428 (Tex.App.—Houston 1974) (noting that there is "no Texas authority for the proposition that an individual can be held personally liable under the alter ego doctrine when he owns none of the outstanding stock of the corporation").
>
> In the instant case, the district court made no findings that Ali Mackie owned stock in Freetown, and the record reflects that Appellees offered no evidence of such ownership. Rather, the record shows that, while Ali Mackie performed managerial duties and held a position on Freetown's board of directors, Najat Mackie was the sole shareholder of Freetown. Appellees do not even argue before this court that they provided affirmative evidence to the district court to show that Ali Mackie owned stock in Freetown; instead, they merely assert that "Ali Mackie's alleged lack of stock ownership was not proven by Appellants." Appellees thus rely exclusively on Ali Mackie's managerial control of Freetown to support their case that Freetown is Ali Mackie's alter ego, which, standing alone, is insufficient under Texas law to support an alter ego finding.

*Id.*

Furlough was an owner of Technicool. The Second Amended Complaint is replete with detailed, factual allegations (more than sufficient to meet the Rule 9's heightened pleading standard) of wrongful and allegedly fraudulent conduct by Furlough. If proven these allegations may justify a piercing of the veil. For example, the Trustee alleges that Furlough orchestrated the transfer of substantial assets into Safe-T-Cool on the eve of bankruptcy. (ECF No. 27 at 12–13). These transfers were done in direct fraud of the Technicool estate, satisfying the required dishonesty of purpose, and for the benefit of Furlough and his son-in-law. These allegations are detailed in paragraphs 39-42 of the Second Amended Complaint. (ECF No. 27 at 12–13). They are largely embellished with other examples of fraudulent conduct through the Complaint.

Inasmuch as the allegations in paragraph 39-42 are themselves adequate, the Court need not evaluate every other allegation. There are sufficient, Rule-9 satisfactory allegations against the former owner to survive both a motion to dismiss and a motion for more definite statement.

At oral argument, the Trustee argued that Huckaby—a person in control and Furlough's son-in law—was a de facto owner. However sincere such a belief might be, the Second Amended Complaint offers no factual support for that allegation. There is not a scintilla of argument that Safe-T-Cool or World Fab owned an interest in Technicool.

At first blush, the language in *Bollore* appears to limit alter ego relief against non-shareholders; however, a more careful reading of *Bollore* in conjunction with the Texas Business Organizations Code allows a second possibility. *Bollore* was a lawsuit seeking to reverse pierce the veil and hold a corporation liable for the debts of an individual, non-owner of the corporation whose only connection to the company was in a managerial capacity. To that end, the attempt to hold Huckaby liable is foreclosed.

Yet, the Texas Business Organizations Act contemplates that an affiliate of an owner might also be held liable under a veil piercing theory. Section 21.223(b) is explicit. Although § 21.223(a) generally bars liability, subsection (b) preserves veil piercing against both an individual shareholder and "an affiliate" that "caused the corporation to be used for the purpose of perpetrating and did perpetrate an actual fraud on the obligee primarily for the direct personal benefit of the holder, beneficial owner, subscriber, or affiliate."

In *Tryco Enterprises, Inc., v. Robinson*, a husband and wife owned a temporary staffing agency which was sued by an employee for violations of the Fair Labor Standards Act. 390 S.W.3d 497, 501 (Tex. App.—Houston [1st Dist.] 2012, no pet.). The employee won the suit but before he could collect on the judgment, the owners had transferred assets out of the company and founded a new one named Crown Staffing to avoid paying the employee. *Id.* at 502. The employee filed suit again, seeking to pierce the corporate veil and collect against the newly founded company and owners. *Id.*

The First District Court of Appeals held a finding of alter ego and single business enterprise under Tex. Bus. Orgs. Code § 21.223 was appropriate between the old and new companies. *Id.* at 509. The fact that the husband and wife held ownership of the newly created entity, transferred all assets from the old business to the new entity, and used that entity as a means to attempt to defraud the employee from collecting his judgment was adequate to support piercing the corporate veil. *Id.* at 510–11.

The Trustee's allegations against both World Fab and Safe-T-Cool closely parallel those in *Robinson*, and are explicit and pervasive. The Trustee alleges that Furlough solely owned both of those entities. (ECF No. 27 at 5). The Second Amended Complaint also explicitly describes how Furlough used these affiliates to perpetrate frauds by denuding Technicool of its

ability to pay its legitimate debts such as by transferring assets from Technicool to WorldFab on the eve of bankruptcy. (ECF No. 27 at 12–13). If proven at trial, the allegations are sufficient to allow for veil piercing similar to *Robinson*.

Count II – Turnover

Count II of the Second Amended Complaint seeks a declaratory judgment for turnover of estate property. It appears that this Count rests on a victory by the Trustee of the veil-piercing count. If the veil is pierced, the Trustee seeks an order compelling the pierced entities to turn over their property. The Defendants seek to dismiss this cause of action because it does not specify which property must be turned over. Read in context, the Second Amended Complaint seeks a turnover of *all* property held by an alter ego.

Accordingly, the turnover cause of action is dismissed as to Huckaby. It is not otherwise dismissed.

Count III – Fraudulent Conveyances.

The Defendants do not seek a dismissal of these claims other than by claiming that the Second Amended Complaint fails to satisfy Rule 9. The Court has reviewed the Second Amended Complaint and disagrees. The Second Amended Complaint is specific as to its fraudulent conveyance allegations. The motion to dismiss is denied.

County IV – Injunctive Relief.

The Defendants do not argue for the dismissal of this cause of action.

## Conclusion

The Court will enter a separate order that dismisses all alter ego and turnover claims against Huckaby. The balance of the claims remain.

SIGNED **February 14, 2018.**

---
Marvin Isgur
UNITED STATES BANKRUPTCY JUDGE