

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

ENTERED
11/01/2018

| | | |
|---|---|---|
| IN RE: | § | |
| **TECHNICOOL SYSTEMS, INC.** | § | **CASE NO: 15-34435** |
| Debtor(s) | § | |
| | § | **CHAPTER 7** |
| | § | |
| **LOWELL T. CAGE,** *et al* | § | |
| Plaintiff(s) | § | |
| | § | |
| **VS.** | § | **ADVERSARY NO. 17-03265** |
| | § | |
| **WORLDFAB, INC.,** *et al* | § | |
| Defendant(s) | § | |

## MEMORANDUM OPINION

The Trustee filed his second amended complaint on November 6, 2017, alleging that WorldFab, Inc; Safe-T-Cool, Inc.; Robert Furlough; and Jeff Huckaby fraudulently transferred assets and abused the corporate form to perpetuate a fraud on Technicool. (*See generally* ECF No. 27). The Trustee sought turnover of estate property, avoidance of fraudulent transfers, a declaratory judgment regarding corporate veil piercing, and injunctive relief for the valid causes of action. (ECF No. 27 at 14–29).

WorldFab, Safe-T-Cool, and Furlough filed a motion for summary judgment which argued the Trustee's complaint is barred under res judicata and Texas law regarding veil piercing. (ECF No. 77).

The Defendants' motion for summary judgment is granted in part and denied in part.

## Background[1]

Robert Furlough founded Powerhouse Marine International, Inc., in the 1970s to sell industrial heating, ventilation, and air conditioning ("HVAC") units to the oil and gas industry. (ECF No. 27 at 4).  Furlough's business grew to include the production of modular control houses as well as HVAC units.  In 1997, Furlough founded Safe–T–Cool, Inc., in order to spin off the HVAC producing portion of Powerhouse into a separate company.  (ECF No. 27 at 4). After the split, Powerhouse continued to build modular control houses until 2006, when Furlough created WorldFab, Inc., which assumed all of Powerhouse's modular building assets and operations.  (ECF No. 27 at 5).

In 2006, Safe–T–Cool was accused of trademark infringement and became involved in a dispute over the right to use the Safe–T–Cool name.  (ECF No. 27 at 5).  Furlough decided to create a new entity to assume Safe–T–Cool's operations.  To effectuate this, Furlough founded Technicool in 2008, naming himself as the sole owner and his then son-in-law, Robert Huckaby, as President.  (ECF No. 27 at 5–6).  All of Safe–T–Cool's assets and operations were transferred to Technicool which operated until August 14, 2015, when it filed for chapter 7 bankruptcy in this Court.  (ECF No. 27 at 4).

One of Technicool's principal customers was National Oilwell Varco ("NOV").  (ECF No. 27 at 11).  On November 10, 2014, NOV sued the Technicool in Texas state court.  (ECF No. 27 at 11).  The lawsuit alleged various causes of action, including breach of contract, breach of warranty, negligent misrepresentation, and product liability. (ECF No. 27 at 13).

In Technicool's bankruptcy case, NOV has been the only active creditor.  (*See generally* Case No. 15–34435).  NOV developed an alliance with the Trustee in which NOV's counsel was

---

[1] The following background section is intended to provide context for the dispute and does not constitute findings of fact by the Court.

retained by the Trustee to represent the Trustee in litigation against Technicool's former owners and affiliates.  As an accommodation to the Trustee (and to overcome any potential conflict), NOV agreed to subordinate its claims against the Estate to 100% payment of all administrative expenses and to 100% recoveries by all other unaffiliated, general unsecured creditors in this case.

In light of NOV's agreement to fully subordinate its interest and other factors, the Court approved NOV's state court counsel as Trustee's counsel in this present litigation.  (Case No. 15–34435; ECF No. 96).

The Trustee's complaint alleged four general causes of action against Furlough, Huckaby, WorldFab, and Safe-T-Cool:

- Count I seeks a declaratory judgment piercing the corporate veil against Furlough, WorldFab, and Safe-T-Cool.

- Count II seeks turnover of estate property if the Trustee successfully establishes the veil piercing cause of action in Count I.

- Count III seeks to avoid alleged fraudulent transfers made to and among Furlough, Huckaby, WorldFab, and Safe-T-Cool.

- Count IV seeks injunctive relief if the Trustee succeeds in prosecuting the other causes of action in his complaint.

Furlough, Huckaby, WorldFab, and Safe-T-Cool filed a joint motion to dismiss, arguing that the Trustee's amended complaint failed to state a claim upon which relief may be granted. (ECF No. 31).  The Court granted Huckaby's motion to dismiss with regard to the alter ego and turnover claims but denied the remainder of the Defendants' requested relief.  (ECF No. 42 at 11).

The Court now addresses the Defendants' motions for summary judgment which argue that the Trustee's misappropriation cause of action is barred by res judicata and his veil piercing claim contains legal and factual flaws which make recovery impossible.  (*See* ECF No. 77)

## Jurisdiction

The District Court has jurisdiction over this proceeding under 28 U.S.C. § 1334(a). Pursuant to 28 U.S.C. § 157(a), this proceeding has been referred to the Bankruptcy Court by General Order 2012-6.

## Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  FED. R. BANK. P. 7056 incorporates FED. R. CIV. P. 56 in adversary proceedings.  A party seeking summary judgment must demonstrate the absence of a genuine dispute of material fact by establishing the absence of evidence supporting an essential element of the non-movant's case.  *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009).  A genuine dispute of material fact is one that could affect the outcome of the action or allow a reasonable fact finder to find in favor of the non-moving party.  *Gorman v. Verizon Wireless Tex., LLC*, 753 F.3d 165, 170 (5th Cir. 2014) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

In cases involving the interpretation of a contract, summary judgment is only appropriate where the language of the contract is unambiguous.  *See Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1192 (2d Cir. 1996); *Cooper Indus., LLC v. Precision Castparts Corp.*, 2016 WL 4939565, at *6 (S.D. Tex. Sept. 14, 2016).

A court views the facts and evidence in the light most favorable to the non-moving party at all times. *Ben-Levi v. Brown*, 136 S. Ct. 930 (2016). Nevertheless, the Court is not obligated to search the record for the non-moving party's evidence. *Keen v. Miller Envtl. Grp., Inc.*, 702 F.3d 239, 249 (5th Cir. 2012). "Summary judgment may not be thwarted by conclusional allegations, unsupported assertions, or presentation of only a scintilla of evidence." *Hemphill v. State Farm Mut. Auto. Ins. Co.*, 805 F.3d 535, 538 (5th Cir. 2015), *cert. denied*, 136 S. Ct. 1715 (2016).

A party asserting that a fact cannot be or is genuinely disputed must support that assertion by citing to particular parts of materials in the record, showing that the materials cited do not establish the absence or presence of a genuine dispute, or showing that an adverse party cannot produce admissible evidence to support that fact. FED. R. CIV. P. 56(c)(1). The Court need consider only the cited materials, but it may consider other materials in the record. FED. R. CIV. P. 56(c)(3). The Court should not weigh the evidence. *Wheat v. Fla Par. Juvenile Justice Comm'n*, 811 F.3d 702, 713 (5th Cir. 2016). A credibility determination may not be part of the summary judgment analysis. *E.E.O.C. v. LHC Grp., Inc.*, 773 F.3d 688, 694 (5th Cir. 2014). However, a party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence. FED. R. CIV. P. 56(c)(2). Moreover, the Court is not bound to search the record for the non-moving party's evidence of material issues. *Willis v. Cleco Corp.*, 749 F.3d 314, 317 (5th Cir. 2014).

"The moving party bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact." *Nola Spice Designs, LLC v. Haydel Enterprises, Inc.*, 783 F.3d 527, 536 (5th Cir. 2015). The evidentiary support needed to meet the initial

summary judgment burden depends on whether the movant bears the ultimate burden of proof at trial.

If the movant bears the burden of proof on an issue, a successful motion must present evidence entitling the movant to judgment at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986). Upon an adequate showing, the burden shifts to the non-moving party to establish a genuine dispute of material fact. FED. R. CIV. P. 56(c)(1); *Celotex*, 477 U.S. at 322–24. The non-moving party must cite to specific evidence demonstrating a genuine dispute. FED. R. CIV. P. 56(c)(1); *Celotex*, 477 U.S. at 324. The non-moving party must also "articulate the manner in which that evidence supports that party's claim." *Duffie v. United States*, 600 F.3d 362, 371 (5th Cir. 2010). Even if the movant meets its initial burden, the motion should be granted only if the non-movant cannot show a genuine dispute of material fact.

## Analysis

### Evidentiary Objections

The Trustee's response requests that the Court strike a number of exhibits the Defendants offered as summary judgment evidence on hearsay and relevance grounds. (ECF No. 98 at 32–35). The Court did not consider any of the evidence in question in ruling on this summary judgment motion, rendering the Trustee's request moot.

The Defendants also filed a similar motion to strike unnecessary evidence presented in the Trustee's response to their motion for summary judgment. (ECF No. 111). While ruling on the motion for summary judgment, the Court considered only those exhibits the Trustee cited in his brief and did not consider any material outside of those citations. The Court did not consider exhibits "Q and R" which the Defendants considered "objectionable declarations."

The Defendants also urge the Court to exclude all of the Trustee's summary judgment evidence based on the Trustee's alleged refusal to cooperate with the Defendants during the discovery process.  (ECF No. 111 at 8).  The appropriate mechanism for resolving discovery disputes is addressed in the Federal Rules of Civil Procedure.  If necessary, the Defendants may (and previously have) presented the Court with motions to compel production of requested discovery.  *See* FED. R. CIV. P. 37.  Discovery disputes have been separately addressed.  The Court denies the Defendants' request to exclude the Trustee's evidence based on discovery disputes.

<u>Res Judicata</u>

The Defendants claim that res judicata bars the Trustee's complaint since the Court previously ruled on the disputed facts and causes of action in a separate suit where the parties reached an agreed final judgment.  (*See* Case No. 16-03022, ECF No. 22).  The Defendants argue that the Trustee's previous agreed judgment satisfies the requirements of res judicata. (ECF No. 77 at 13–32).  The Trustee argues that the doctrine of res judicata is inapplicable because the current adversary proceeding is materially different from the previous suit and the first suit failed to address the merits of this dispute.  (*See* ECF No. 98 at 5–21).

Under the doctrine of res judicata, "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Allen v. McCurry*, 449 U.S. 90, 94 (1980).  Res judicata "bars the litigation of claims that either have been litigated or should have been raised in an earlier suit," *Test Masters Educ. Services, Inc. v. Singh*, 428 F.3d 559, 571 (5th Cir. 2005).  The party asserting res judicata must establish four elements: (i) that the parties are either identical or in privity; (ii) the court entering the prior judgment had appropriate jurisdiction; (iii) the prior suit was adjudicated with a final

action on the merits; and (iv) both suits involve the same causes of action. *Houston Prof. Towing Ass'n v. City of Houston*, 812 F.3d 443, 447 (5th Cir. 2016) (quoting *Comer v. Murphy Oil USA, Inc.*, 718 F.3d 460, 467 (5th Cir. 2013)).

### Privity of Parties

The first element of res judicata requires that the parties are either identical or in privity with one another before a prior ruling may preclude subsequent litigation. *Id*. The Defendants contend that the Trustee's complaint, which alleges that Huckaby and Safe-T-Cool acted as one entity with Technicool and WorldFab, necessarily establishes that the Huckaby and Safe-T-Cool are in privity with the named defendants in a prior suit which was settled on August 8, 2016 through an agreed judgment. (ECF No. 77 at 23). The Trustee opposes this conclusion, arguing that because Huckay and Safe-T-Cool were not parties to the first lawsuit, this element of res judicata is not satisfied. (ECF No. 98 at 19).

Defendants cite *Russell v SunAmerica Sec., Inc.*, 962 F.2d 1169, 1175–76 (5th Cir. 1992) to support their contention that successor organizations and officers satisfy the requirement of identity of the parties. (ECF No. 77 at 24–26). In *SunAmerica*, a plaintiff sued a corporation for securities violations which eventually ended in a settlement agreement that released the corporation from all past, present, and future claims related to the plaintiff. *Id*. However, before the settlement was finalized, SunAmerica entered into an asset purchase agreement with the corporation whereby SunAmerica acquired contracts, future income, and tangible goods but did not assume any of the corporation's liabilities. *Id*. The plaintiff filed a subsequent suit against SunAmerica, claiming that SunAmerica was still liable for the corporation's torts as its successor in interest and that the negotiated release did not apply to SunAmerica. *Id*. The Fifth Circuit held that under principles of vicarious liability, "[a] corporation which acquires the assets (but

not the stock) of another corporation is not obligated for the liabilities of the corporation from which the assets are acquired." *Id*. at 1175.  The Fifth Circuit held that the relationship between the corporation and SunAmerica justified applying res judicata to bar the plaintiff's cause of action. *Id*. at 1176.

As the Trustee argues, *SunAmerica* is distinguishable from the present facts in certain respects. (*See* ECF No. 98 at 20).  The Trustee alleges that Huckaby and Safe-T-Cool's liability stems from "their own independent conduct or because they were used as alter egos to perpetrate fraud." (ECF No. 98 at 20).  In *SunAmerica*, an asset purchase agreement bestowed SunAmerica with the rights of the predecessor corporation.  *SunAmerica*, 962 F.2d at 1172.  However, the Trustee alleges that Safe-T-Cool was created with Huckaby as an officer for the specific purpose of transferring assets away from Technicool. (ECF No. 27 at 6–9).  Rather than representing a successor in interest, Safe-T-Cool and Huckaby represent new actors who committed independent wrongs, for which the Trustee seeks recovery.  Accordingly, no privity exists between Safe-T-Cool and Huckaby with regard to the first requirement of res judicata.

However, the Trustee's present complaint also seeks turnover of estate property and fraudulent transfers against both WorldFab and Furlough. (ECF No. 27 at 14).  These are the identical parties the Trustee sought to hold responsible in his prior complaint which sought a declaration of property belonging to the bankruptcy estate and an order that Furlough and WorldFab turn over that property under 11 U.S.C. § 542. (Case No. 16-03022; ECF No. 1).  While the Trustee alleges that "new parties, Huckaby and Safe-T-Cool, are liable" this fails to refute the identity between Furlough and WorldFab which exists between the two suits. (ECF No. 98 at 20).  Accordingly, with respect to Furlough and WorldFab, the identity of parties requirement is satisfied.

The Court notes that issue preclusion is not alleged.  That is noteworthy because the prior suit failed to allege the alter ego cause of action that is at issue here.  Inasmuch as the present Defendants were not actual parties to the prior lawsuit, it would not have been possible to obtain a judgment in the prior suit that the Defendants were alter egos.

*Final Adjudication on the Merits*

The parties also dispute whether the first lawsuit was finally adjudicated on the merits. The Defendants claim that the Agreed Judgment the Court entered on August 8, 2016, was a final adjudication on the merits of the case.  (ECF No. 77 at 13).  The Trustee argues that no final adjudication occurred because the judgment was entered into based on collateral considerations and was not intended to have any preclusive effect on subsequent causes of action.  (ECF No. 98 at 13–15).

The preclusive effect of a judgment under res judicata applies to "the litigation of all issues relevant to the same claim between the same parties, whether or not raised at trial." *United States v. Viking Res., Inc.*, 607 F. Supp.2d 808, 826 (S.D. Tex. 2009) (quoting *Kaspar Wire Works, Inc. v. Leco Eng'g & Mach., Inc.*, 575 F.2d 530, 535–36 (5th Cir. 1978)).  The text of the Agreed Final Judgement outlines specific property belonging to the estate which the Trustee may liquidate, that was to be segregated and released from claims by WorldFab or Furlough.  (Case No. 16-03022; ECF No. 22 at 1–2).

This element weighs in favor of Furlough and WorldFab with regard to the claim for Turnover of estate property.  The Final Agreed Judgment specifically lists the property the judgment pertains to the turnover of certain belonging to WorldFab such as physical property such as computers, compressors, buildings, and A/C units.  (*See* Case No. 16-03022; ECF No. 22

at 4–20).  These items were related to Trustee's complaint in the original suit which sought turnover of items pursuant to 11 U.S.C. §§ 541 and 542 against WorldFab and Furlough.

The Trustee's second complaint argues that based on newly discovered facts, piercing the corporate veil is appropriate in order to impose joint and several liability among all defendants in addition to avoidance of fraudulent transfers.  (ECF No. 98 at 8).  However, it also includes a claim for turnover of estate property under §§ 541 and 542.  This turnover cause of action is an identical claim to the ones disposed of in the final agreed judgment against Furlough and WorldFab, weighing in favor of finding a final adjudication on the merits.

The Trustee argues that this previous judgment was based on collateral considerations and was not intended to be preclusive.  However, it was a final, binding Order of the Court which specifically denied any relief not otherwise requested.  (Case No. 16-03022 at 2).  The onus rested on the Trustee to fully investigate and pursue the possible turnover causes of action or not agree to the Judgment.

Although the Agreed Judgment bound Furlough and WorldFab, Huckaby and Safe-T-Cool were not named defendants in that suit.  Consequently, the Agreed Judgment cannot be a final adjudication on the merits with regard to the Trustee's current claims against them.

### Same Causes of Action

In order for res judicata to apply, both suits must involve the same causes of action.  To determine whether the same causes of action are present, courts apply the transactional test which examines whether the two actions are based on the "same nucleus of operative facts." *Orek Direct, LLC v. Dyson, Inc.*, 560 F.3d 398, 401–02 (5th Cir. 2009).  The transactional test bars re-litigation of "all rights of the plaintiff with respect to all or any part of the transaction, or series of connected transactions, out of which the original action arose.  *Test Masters Educ.*

*Serv., Inc. v. Singh*, 428 F.3d 559, 571 (5th Cir. 2005).   Under the transactional test, courts compare factors such as: "whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." *Id.* (quoting *Davis v. Dallas Area Rapid Transit*, 383 F.3d 303, 313 (5th Cir. 2004)).   While the similarity of facts between successive litigation may be sufficient to establish collateral estoppel, the transactional test and res judicata are satisfied only when the same operative facts are present.  *Singh*, 428 F.3d at 572 (quoting *Petro-Hunt, LLC v. United States*, 365 F.3d 395 (5th Cir. 2004)).

In *Singh*, the Fifth Circuit applied the common nucleus of operative facts test to a similar series of facts.   428 F.3d at 571–76.   The parties had originally litigated a trademark dispute related to the use of the name "Test Maters," whether that name obtained a secondary meaning, and the right to use the corresponding website domain name.   *Id.* at 571–72.   Conversely, the second suit involved alleged misrepresentations to potential customers and misleading information posted on a website.   *Id.* at 572.   The Fifth Circuit held that despite the factual similarities between the two suits, res judicata did not apply.   *Id.*  Specifically, the fact that the pertinent facts in the successive litigations occurred at different times and led to different causes of action cautioned against holding that res judicata applied.   *Id.*

The parties present opposing views regarding whether the facts in this dispute satisfy the transactional test.   The Defendants claim that the two complaints are essentially one transaction and the Trustee's failure to bring these complaints during the original litigation now bars their re-litigation under res judicata.  (ECF No. 77 at 14–21).   To the Trustee, it was impossible to learn the facts necessary to bring his second suit until the completion of the first and given the complexity of the alleged fraud, it is impractical for him to have brought the claims at issue in

his first suit.  (ECF No. 98 at 5–12).  However, these arguments focus on comparing the factual similarities between the two litigations.  This comparison alone is inadequate to determine whether the same *operative facts* are present.  *Singh*, 428 F.3d at 572.

In the previous suit, the Trustee believed that Technicool's bankruptcy estate consisted of several pieces of property identified in the Agreed Final Judgment.  (*See* Case No. 16-03022; ECF No. 22 at 4–20).  The Trustee claims to have subsequently learned about the alleged fraudulent transfers that form the basis of this suit after the Agreed Final Judgment was entered. (ECF No. 98 at 6–7).  This suit is distinguishable from the Fifth Circuit's decision in *Singh*, in which the operative facts between the two suits differed when the first suit focused on the legal right to use a website domain name while the second suit alleged malice and fraud in the use of that same website.  428 F.3d at 572.

The Trustee's original complaint sought turnover of property belonging to the bankruptcy estate, while the Trustee's current complaint sought the exact same causes of action against Furlough and WorldFab in addition to imposing joint and several liability on the defendants because of alleged fraudulent transfers and conduct.  (ECF No. 98 at 9).  The facts giving rise to these claims both relate to the same time period between August 2013 and August 2015 and involve the exact same causes of action for turnover of property of the estate.  (ECF No. 27 at 7; Case No. 16-03022 ECF No. 1 at 3–8).  The Trustee argues that the addition of new causes of action in his second complaint combined with the discovery an alleged complex, fraudulent scheme weighs in favor of finding no common nucleus of operative fact.  (ECF No. 98 at 17). Further, he urges the court to consider the "fast paced nature of bankruptcy litigation" before applying res judicata.  (ECF No. 98 at 10).  Despite the Trustee's arguments, the first suit alleged that in 2015 Furlough and WorldFab collectively operated to withhold property from the estate.

His second suit alleges the exact same cause of action against Furlough and WorldFab, although it points to different property that is subject to turnover.  Despite the differences, the *operative* facts between the two suits revolve around both Furlough and WorldFab withholding property from the estate, weighing in favor of finding the same causes of action in both complaints.

The Trustee purports that the facts leading to the second suit were impossible to discover during the pendency of the first suit and it was newly discovered facts which led to the second suit.  (ECF No. 98 at 9–12).  The Trustee's sole reason for claiming he did not have a full and fair opportunity to bring his claims against Furlough and WorldFab in the first suit revolve around the "fast-paced nature of the bankruptcy process."  However, the Trustee filed his original complaint in February of 2016 and voluntarily entered into an Agreed Judgment in August 2016 which ended his suit.  (*See* Docket Report in Case No. 16-03022).  The Trustee had a full and fair opportunity to investigate the facts and circumstances during his first suit but failed to do so.  He provides no compelling explanation for why he was unable or frustrated from discovering these facts beyond the speed of litigation in the first suit (which he assented to).  Attempting to alter his initial decision through subsequent re-litigation is precisely the reason why res judicata is applied—to promote fairness and ensure that "litigation must eventually have an end."  *Chavez v. Dole Food Co., Inc.*, 836 F.3d 205, 227 (3d Cir. 2016).

Accordingly, as to Furlough and WorldFab, the same common nucleus of operative facts existed between the first and second suits, weighing in favor of applying res judicata.  However, the same does not hold true for the Trustee's claims against Safe-T-Cool and Huckaby.  These two Defendants were not subject to the Trustee's first suit and their actions arise out of different facts than those disposed of in the Agreed Judgment.  (ECF No. 27 at 6, 10, and 13).  Thus, res judicata does not apply to the claims against Huckaby and Safe-T-Cool.

Veil Piercing

The Defendants also argue that summary judgment is appropriate regarding the Trustee's veil piercing claims.  (ECF No. 77 at 33).  The Defendants argues that veil piercing is not an independent cause of action but rather a remedy which is powerless without first establishing another cause of action.  (ECF No. 77 at 33).  The Court directly addressed an identical argument presented in a different form in its Memorandum Opinion issued on February 14, 2018.  (*See* ECF No. 42 at 6–10).

The Trustee has alleged several causes of action including fraudulent transfers.  (ECF No. 27 at 26).  If the Trustee proves that such fraudulent transfers occurred, he may then demonstrate that Safe-T-Cool abused corporate form in order to perpetuate a fraud for its benefit.  Should the Trustee satisfy these requirements, he would satisfy the requirements for veil piercing in the Texas Business Organizations Code § 21.223(b).  Accordingly, a cause for veil piercing exists which the Trustee may seek to establish in conjunction with the other causes of action listed in his complaint.

The Defendants also move for summary judgment on the grounds that the Trustee's veil piercing claim arises from Technicool's contractual obligations and the Trustee has failed to establish that any direct personal benefit inured to Safe-T-Cool, WorldFab, or Furlough.  (ECF No. 77 at 37).  The Trustee claims that adequate evidence exists for the Court to conclude that WorldFab, Safe-T-Cool, and Fourlough all benefitted in some fashion from the transfers of assets from Technicool.  (ECF No. 98 at 29–31).

A corporation's individual shareholders, officers, and directors are typically shielded from liability for the corporation's contractual obligations.  Tex. Bus. Orgs. Code Ann. § 21.223(a)(2); *Holloway v. Skinner*, 898 S.W.2d 793, 795 (Tex. 1995).  However, the Texas

Business Organizations Code contains an exception to this rule which imposes liability if the corporation is used "for the purpose of perpetrating . . . an actual fraud on the obligee primarily for the *direct personal benefit* of the holder, beneficial owner, subscriber, or affiliate." TEX. BUS. ORGS. CODE ANN. § 21.223(b); *TecLogisitcs v. Dersser-Rand Grp., Inc.*, 527 S.W.3d 589, 603 (Tex. App.—Houston [14th Dist.] 2017).

With regard to Robert Furlough, the Trustee purports that he has satisfied this requirement by demonstrating that Furlough received transferred funds from Safe-T-Cool which originated from Technicool and that Furlough's wife received a salary from Technicool which the Court should impute to Furlough. (ECF No. 98 at 29–30). These allegations fail to meet the standard for a direct, personal benefit under § 21.223(b). At best, these claims suggest that Safe-T-Cool and Furlough's wife may be labile under the Texas statute, but arguing that Furlough received a benefit through these intermediaries runs contrary to the statutory language in § 21.223(b). The Trustee cites *In re Tegeler*, a recent bankruptcy case in the Southern District of Texas, to support the proposition that a personal benefit conferred on a family member may be sufficient. No. 17-03043, 2018 WL 2972360, at *66 (Bankr. S.D. Tex. June 8, 2018). However, the court in *Tegeler* found the fact that the debtor "collected a salary" compelling because salaries themselves may "constitute a direct personal benefit." *Id.* This is distinguishable from the present case because Furlough received no payments or salary from Technicool during the two years prior to filing for bankruptcy. (ECF No. 95 at 10).

The Trustee alternatively claims that Technicool's ledgers provide evidence that Furlough received payments and other benefits from Technicool's assets. (ECF No. 98 at 30, n. 39). The Trustee's evidence consists of over 500 pages which detail payments from Technicool's accounts between 2012 and 2015. (*See* ECF Nos. 98-21, 98-22, 98-23, 98-24).

The Trustee summarily urges the Court to conclude that these ledgers show "payments and other benefits to Furlough and his family."  (ECF No. 98 at 30, n. 39).  However, the Trustee fails to point to specific parts within these exhibits which demonstrate the alleged payments and how they constitute a direct, personal benefit to Furlough.

Without clear evidence regarding whether Furlough has received a direct, personal benefit from the alleged transfers, the Trustee has failed to raise a genuine issue of material fact regarding this cause of action.  As a result, Furlough's motion for summary judgment is granted.

Safe-T-Cool also challenges the Trustee's use of § 21.233 as a viable cause of action. (ECF No. 77 at 36).  However, unlike Furlough, Safe-T-Cool argues that the Trustee's claim fails because he has not described a fraud which occurred "on a creditor who filed a proof of claim against the bankruptcy estate."  (ECF No. 77 at 36–37).  There is no such requirement in § 21.233(b) limiting a veil piercing claim to a creditor who has filed a proof of claim.

In *Tryco Enterprises, Inc. v. Robinson*, a Texas Court of Appeals found that veil piercing was an appropriate remedy when business owners forfeited their corporate charter and transferred assets to a new corporation in hopes of thwarting a judgment lien on the claimant's collection attempts.  390 S.W.3d 497, 509 (Tex. App.—Houston [1st Dist.] 2012).  The facts in this case closely parallel those in *Robinson*.  The Bankruptcy Code confers the status of a judgment lien claimant on the Trustee who has alleged that WorldFab and Safe-T-Cool were active participants in an attempt to denude Technicool of its assets and goodwill.  (ECF No. 98 at 30–31).  As a result, the Trustee may bring a claim under § 21.233(b) against WorldFab and Safe-T-Cool.

Safe-T-Cool also questions whether the Trustee presented evidence that these entities received direct, personal benefit from the alleged transfers.  (ECF No. 77 at 37).  Here, the

Trustee has provided specific evidence regarding the alleged transfers such as moving assets between companies, Safe-T-Cool answering requests from Technicool's business inquiries, and employees representing that they work with both Technicool and Safe-T-Cool simultaneously. (*See, e.g.* ECF No. 98-30 at 3; 98-31 at 1–3; 98-33 at 5; 98-11 at 2).   The evidence the Trustee provided creates a genuine issue of material fact regarding whether these entities received a direct, personal benefit from these purported transfers.   As a result, Safe-T-Cool's motion for summary judgment on the Trustee's veil piercing claim is denied.

<u>Timeliness of Claims</u>

The final point of contention between the parties addresses whether the Trustee's claims were timely filed.   At issue is whether the Trustee's amended complaint may include his assertion that "good will and other intangibles" were fraudulently transferred along with other assets previously described in the prior complaint.   (ECF No. 98 at 32).

The Federal Rules of Civil Procedure states that an amendment relates back if "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading."   FED. R. CIV. P. 15(c)(1)(B).   On the other hand, an amendment which predicates its claims on "new or distinct conduct, transactions, or occurrences" presents a new cause of action which does not relate back to the original complaint.   *Holmes v. Greyhound Lines, Inc.*, 757 F.2d 1563, 1566 (5th Cir.1985).

The Trustee's original complaint alleged that the Defendants committed fraudulent transfers and commingling of assets.   (ECF No. 1 at 5).   Although the first complaint does not formally detail a cause of action for fraudulent transfers, the allegations are clearly set forth and include significant detail as part of the Trustee's original veil piercing claim.   (ECF No. 1 at 11). The second amended complaint then formally describes the Trustee's basis for his avoidance of

fraudulent transfers claim based on the same allegations in the original complaint.  (ECF no. 27 at 26).  The amended complaint satisfies the relation back requirement in Rule 15(c)(1)(B).

## **Conclusion**

The Court will issue an Order consistent with this Memorandum Opinion.

SIGNED **October 31, 2018.**

Marvin Isgur
UNITED STATES BANKRUPTCY JUDGE