

ENTERED
11/01/2018

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: § | | |
| TECHNICOOL SYSTEMS, INC. § | CASE NO: 15-34435 | |
| Debtor(s) § | | |
| § | CHAPTER 7 | |
| LOWELL T. CAGE, *et al* § | | |
| Plaintiff(s) § | | |
| § | | |
| VS. § | ADVERSARY NO. 17-3265 | |
| § | | |
| WORLDFAB, INC., *et al* § | | |
| Defendant(s) § | | |

## MEMORANDUM OPINION

National Oilwell Varco ("NOV") filed suit against Technicool Systems, Inc., in Texas state court, alleging breach of contract for malfunctioning Heating, Ventilation, and Air Conditioning ("HVAC") units NOV purchased. (ECF No. 95 at 2). Technicool eventually filed for chapter 7 bankruptcy, leading NOV to file a proof of claim based on its state court lawsuit. (ECF No. 94-4 at 3). NOV later amended its state court petition to include specific fraud claims which allege that Robert Furlough, Technicool's founder, played a role in the purported fraud against NOV. (ECF No. 95-4 at 21).

Furlough filed a motion for summary judgment, arguing that NOV may only look to the contract for any possible recovery and its fraud claims are barred under the Texas Business Organizations Code. (ECF No. 95 at 3–4).

Furlough's motion for summary judgment is granted as to his personal liability for fraud by Technicool. Summary judgment is denied as to Furlough's liability for his individual conduct in which he allegedly committed fraud.

**Background**[1]

Robert Furlough founded Powerhouse Marine International, Inc., in the 1970s to sell industrial HVAC units to the oil and gas industry. (ECF No. 27 at 4). Furlough's business grew to include the production of modular control houses as well as HVAC units. In 1997, Furlough founded Safe–T–Cool, Inc., in order to spin off the HVAC producing portion of Powerhouse into a separate company. (ECF No. 27 at 4). After the split, Powerhouse continued to build modular control houses until 2006, when Furlough created WorldFab, Inc., which assumed all of Powerhouse's modular building assets and operations. (ECF No. 27 at 5).

In 2006, Safe–T–Cool was accused of trademark infringement and became involved in a dispute over the right to use the Safe–T–Cool name. (ECF No. 27 at 5). Furlough decided to create a new entity to assume all of Safe–T–Cool's operations. To effectuate this, Furlough founded Technicool in 2008, naming himself as the sole owner and his then son-in-law, Robert Huckaby, as President. (ECF No. 27 at 5–6). All of Safe–T–Cool's assets and operations were transferred to Technicool, which operated until August 14, 2015, when it filed for chapter 7 bankruptcy in this Court. (ECF No. 27 at 4).

One of Technicool's principal customers was NOV. (ECF No. 27 at 11). From 2010 to 2014, NOV purchased 260 industrial HVAC units at price of $3,297,212.50. According to NOV, Furlough and Technicool agreed to service and support the HVAC units overseas and that the units were tested to withstand the harshest environmental conditions. (ECF No. 104 at 6). NOV claims these attributes were critically important to the HVAC units' intended uses. (ECF No. 104 at 6).

---

[1] The following background section is intended to provide context for the dispute and does not constitute findings of fact by the Court.

Once installed, the HVAC units began failing in the field or were unable to perform at the quoted specifications. (ECF No. 104 at 6–7). This led NOV to sue Technicool on November 10, 2014, in Texas state court. (ECF No. 27 at 11). NOV's lawsuit alleged various causes of action, including breach of contract, breach of warranty, negligent misrepresentation, and product liability. (ECF No. 27 at 13). This lawsuit eventually transitioned into NOV's proof of claim in Technicool's chapter 7 bankruptcy case. (ECF No. 95-4). NOV amended its lawsuit on November 11, 2015, to include fraud claims against Furlough individually. (ECF No. 95-4 at 19).

NOV's amended lawsuit specifically cites four causes of action against Furlough: (i) fraud and fraudulent inducement, (ii) fraud by non-disclosure, (iii) negligent misrepresentation, and (iv) aiding and abetting. (ECF No. 104 at 5).

In Technicool's bankruptcy case, NOV has been the only active creditor. (*See generally* Case No. 15–34435). NOV developed an alliance with the Trustee in which NOV's counsel was retained by the Trustee to represent the Trustee in litigation against Technicool's former owners and affiliates. As an accommodation to the Trustee (and to overcome any potential conflict), NOV agreed to subordinate its claims against the Estate to 100% payment of all administrative expenses and to 100% recoveries by all other unaffiliated, general unsecured creditors in this case.

In light of NOV's agreement to fully subordinate its interest and other factors, the Court approved NOV's state court counsel as Trustee's counsel in this present litigation. (Case No. 15–34435; ECF No. 96).

Furlough moved for summary judgment against NOV's fraud claims, alleging that NOV's claims are barred under the Texas Business Organizations Code § 21.223, merger clauses in the allegedly breached contracts, and the economic loss doctrine. (ECF No. 95 at 3–4).

## Jurisdiction

The Court has "related to" jurisdiction over this matter. The parties have consented to a final adjudication by this Court.[2]

## Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). FED. R. BANK. P. 7056 incorporates FED. R. CIV. P. 56 in adversary proceedings. A party seeking summary judgment must demonstrate the absence of a genuine dispute of material fact by establishing the absence of evidence supporting an essential element of the non-movant's case. *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009). A genuine dispute of material fact is one that could affect the outcome of the action or allow a reasonable fact finder to find in favor of the non-moving party. *Gorman v. Verizon Wireless Tex., L.L.C.*, 753 F.3d 165, 170 (5th Cir. 2014) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

In cases involving the interpretation of a contract, summary judgment is only appropriate where the language of the contract is unambiguous. *See Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1192 (2d Cir. 1996); *Cooper Indus., LLC v. Precision Castparts Corp.*, 2016 WL 4939565, at *6 (S.D. Tex. Sept. 14, 2016).

---

[2] The Court specifically addressed the jurisdictional issues of this dispute in a Memorandum Opinion issued on March 30, 2018, which is available at ECF No. 138 in Case No. 15-34435.

A court views the facts and evidence in the light most favorable to the non-moving party at all times. *Ben-Levi v. Brown*, 136 S. Ct. 930 (2016). Nevertheless, the Court is not obligated to search the record for the non-moving party's evidence. *Keen v. Miller Envtl. Grp., Inc.*, 702 F.3d 239, 249 (5th Cir. 2012). "Summary judgment may not be thwarted by conclusional allegations, unsupported assertions, or presentation of only a scintilla of evidence." *Hemphill v. State Farm Mut. Auto. Ins. Co.*, 805 F.3d 535, 538 (5th Cir. 2015), *cert. denied*, 136 S. Ct. 1715 (2016).

A party asserting that a fact cannot be or is genuinely disputed must support that assertion by citing to particular parts of materials in the record, showing that the materials cited do not establish the absence or presence of a genuine dispute, or showing that an adverse party cannot produce admissible evidence to support that fact. FED. R. CIV. P. 56(c)(1). The Court need consider only the cited materials, but it may consider other materials in the record. FED. R. CIV. P. 56(c)(3). The Court should not weigh the evidence. *Wheat v. Fla Par. Juvenile Justice Comm'n*, 811 F.3d 702, 713 (5th Cir. 2016). A credibility determination may not be part of the summary judgment analysis. *E.E.O.C. v. LHC Grp., Inc.*, 773 F.3d 688, 694 (5th Cir. 2014). However, a party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence. FED. R. CIV. P. 56(c)(2). Moreover, the Court is not bound to search the record for the non-moving party's evidence of material issues. *Willis v. Cleco Corp.*, 749 F.3d 314, 317 (5th Cir. 2014).

"The moving party bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact." *Nola Spice Designs, L.L.C. v. Haydel Enterprises, Inc.*, 783 F.3d 527, 536 (5th Cir. 2015). The evidentiary support needed to meet the

initial summary judgment burden depends on whether the movant bears the ultimate burden of proof at trial.

If the movant bears the burden of proof on an issue, a successful motion must present evidence entitling the movant to judgment at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986). Upon an adequate showing, the burden shifts to the non-moving party to establish a genuine dispute of material fact. FED. R. CIV. P. 56(c)(1); *Celotex*, 477 U.S. at 322–24. The non-moving party must cite to specific evidence demonstrating a genuine dispute. FED. R. CIV. P. 56(c)(1); *Celotex*, 477 U.S. at 324. The non-moving party must also "articulate the manner in which that evidence supports that party's claim." *Duffie v. United States*, 600 F.3d 362, 371 (5th Cir. 2010). Even if the movant meets its initial burden, the motion should be granted only if the non-movant cannot show a genuine dispute of material fact.

## Analysis

### Merger Clause and Economic Loss Doctrine

Furlough purports that NOV's claims are barred under the contractual merger clauses and the economic loss doctrine. Although these are separate theories, both are premised on the idea that the contract between NOV and Technicool forms NOV's sole basis of recovery. (*See* ECF No. 95 at 11–15).

The economic loss doctrine prevents recovery for tort when an injury consists only of economic loss which is the subject of a contract between the parties. *Sw. Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 494 (Tex. 1991); *Ibe v. Jones*, 836 F.3d 516, 526 (5th Cir. 2016). However, an exception to the economic loss doctrine exists which allows for extra-contractual liability when a plaintiff proves that a party violated its duty to not utilize fraudulent

misrepresentations in the procurement of contracts. *Formosa Plastics Corp, USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 46 (Tex. 1998).

NOV has provided evidence that Furlough made representations to NOV regarding the HVAC units and their ability to conform to NOV's specifications, knowing that those representations were false. (ECF No. 104-20 at 6). As a result, NOV suffered injury when the HVAC units required replacement or repair. At the summary judgment stage, this information is sufficient to establish a question of fact regarding whether Furlough individually violated the legal duty to not procure contracts through fraud. *Formosa Plastics Corp.*, 960 S.W.2d at 46.

As this legal prohibition against fraud lies outside the bounds of the contract, Furlough's argument that the contract's merger clause prevents NOV's recovery is similarly inapplicable. A merger clause does not prevent liability for Furlough's independent tort. *Id.* ("[I]t is well established that the legal duty not to fraudulently procure a contract is separate and independent from the duties established by the contract itself."). Accordingly, Furlough's summary judgment arguments based on the economic loss doctrine and contract's merger clause are denied.

Texas Business Organizations Code

Furlough's motion for summary judgment also challenges whether NOV has satisfied its burden of proof in light of provisions within the Texas Business Organizations Code which shield corporate owners from liability. (ECF No. 95 at 7). Specifically, Furlough argues that he did not receive a direct, personal benefit which is required to impose liability on an owner. (ECF No. 98 at 8–10).

A corporation's individual shareholders, officers, and directors are typically immune from liability for the corporation's contractual obligations. TEX. BUS. ORGS. CODE ANN. § 21.223(a)(2); *Holloway v. Skinner*, 898 S.W.2d 793, 795 (Tex. 1995). However, the Texas

Business Organizations Code contains an exception to this rule which imposes liability if the corporation is used "for the purpose of perpetrating . . . an actual fraud on the obligee primarily for the *direct personal benefit* of the holder, beneficial owner, subscriber, or affiliate." TEX. BUS. ORGS. CODE ANN. § 21.223(b) (emphasis added); *TecLogisitcs v. Dersser-Rand Grp., Inc.*, 527 S.W.3d 589, 603 (Tex. App.—Houston [14th Dist.] 2017).

*Texas Business Organizations Code § 21.223(b)*

NOV alleges that regardless of what case law is applied, Furlough has received a direct, personal benefit from the purported fraud he perpetrated, satisfying the exemption to corporate protection in the Texas statute. (ECF No. 104 at 17). NOV claims to have provided evidence demonstrating that Furlough benefitted from money flowing to other entities and to his family members. (ECF No. 104 at 19–20). This evidence fails to satisfy the plain language of § 21.223(b) which requires a direct, personal benefit *to the holder*. At best, NOV's evidence suggests that a benefit inured to other affiliates such as Safe-T-Cool as well as Furlough's family members. (*See e.g.*, ECF No. 104-22; 104-15; 104-26). However, the provided evidence fails to conclusively establish that Furlough himself received a direct benefit from these purported payments. Assuming this is true, NOV's appropriate remedy under the Texas statute is against these entities and individuals and rather than Furlough.

*Texas Business Organizations Code § 21.223(a)(2)*

Since NOV has failed to establish that Furlough's conduct satisfies the exception to corporate liability, NOV's claim rests upon whether the corporate protection provided to officers under § 21.223(a)(2) may shield Furlough. At the outset, the Court notes that the causes of action NOV asserts against Furlough differs from those pursued by the Trustee in a parallel suit. The Trustee has alleged that Furlough abused corporate form to justify applying veil piercing as

a remedy. NOV, on the other hand, has alleged fraudulent conduct and negligent misrepresentation against Furlough. (ECF No. 104 at 5).

Furlough cites *TecLogistics, Inc. v. Dreser-Rand Grp., Inc.*, to support his argument that absent a direct personal benefit to Furlough, the corporate shield in § 21.223(a)(2) protects Furlough from contractual liability. (ECF No. 95 at 9–10). NOV responds that the overwhelming weight of precedent in Texas requires that a corporate actor be held liable for their individual tortious conduct. (ECF No. 104 at 12–17).

While it is true that a significant volume of case law exists regarding whether a corporation's officers may be held liable for corporate wrongs, all case law NOV cited interprets the predecessor statute to Texas Business Organizations Code § 21.223, which was enacted in 2012. (*See* ECF No. 104 at 12–17). As a result, the analysis begins with determining whether § 21.223(a)(2) applies to this dispute between NOV and Furlough on its face. The statute states:

> (a) A holder of shares, an owner of any beneficial interest in shares . . . may not be held liable to the corporation or its obligees with respect to:
>
> > (2) any contractual obligation of the corporation or any matter relating to or arising from the obligation on the basis that the holder, beneficial owner, subscriber, or affiliate is or was the alter ego of the corporation or on the basis of actual or constructive fraud, a sham to perpetrate a fraud, or other similar theory.

TEX. BUS. ORG. CODE § 21.223(a)(2).

Furlough managed and controlled Technicool from 2010 through 2014 when Technicool agreed to provide the alleged fraudulent HVAC units to NOV. (ECF No. 104 at 4). This places Furlough squarely within the corporate protection provided by § 21.223(a) which applies to owners.

Secondly, the statute insulates officers from liability for the contractual obligations between the corporation and the obligee, namely NOV. § 21.223(a)(2). From the attached

9 / 11

exhibits to the parties' motions, it is clear that a contract existed for the HVAC units between Technicool and NOV which NOV now seeks to impute individual liability on Furlough for. (*See* ECF No. 104-10 at 6 "Purchase Order Terms and Conditions"). As a result, the fraud NOV alleges regarding Furlough's purported fraud as a corporate officer fits squarely within the plain language of § 21.223(a)(2), which was specifically enacted to shield corporate officers from fraud allegations absent a showing of direct, personal benefit.

### Furlough's Individual Fraud

NOV's complaint also alleges that Furlough committed individual tortious acts of fraud which induced NOV to purchase the defective HVAC units, knowing that the HVAC units would fail to meet their quoted standards. (ECF No. 104 at 5).

Texas common law holds a corporation's agents individually liable for their tortious acts, even while acting within the scope of their employment. *Miller v. Keyser*, 90 S.W.3d 712, 717 (Tex. 2002) (imposing individual liability due to personal affirmative misrepresentations); *Ward Family Found. v. Arnette (In re Arnette)*, 454 B.R. 663, 697 (Bankr. N.D. Tex. 2011). "In an action seeking to hold an agent individually liable for his tortious or fraudulent acts, the corporate veil is not required to be pierced." *Sanchez v. Mulvaney*, 274 S.W.3d 708, 712 (Tex. App.—San Antonio 2008). Accordingly, Texas Business Organizations Code § 21.223 is inapplicable to shield Furlough against NOV's allegations of individual fraudulent conduct. NOV has sufficiently pled, and Furlough has failed to refute on summary judgment, that Furlough made statements that the HVAC units were "desert proof" and that Technicool would offer support and repairs. (ECF No. 104 at 5). Additionally, the pleading demonstrates that NOV relied on Furlough's statements, that Furlough had knowledge of the HVAC units' inadequacies, and that NOV experienced significant damages as a result of the HVAC units'

failure.  (ECF No. 104 at 7–11).  These statements are adequate to support a cause of action for common law fraud under Texas law.  Consequently, Furlough's motion for summary judgment is denied with regard to NOV's alleged individual fraudulent acts committed by Furlough.

### Conclusion

The Court will issue an Order consistent with this Memorandum Opinion.

SIGNED **October 31, 2018.**

Marvin Isgur
UNITED STATES BANKRUPTCY JUDGE